UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| TERRILL GOODS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 24-138-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JAMES DALEY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Terrill Goods, Sr., is an inmate at the Federal Correctional Institution—McDowell in Welch, West Virginia. Goods filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis* on September 3, 2024. [Record Nos. 1, 2] The Court denied Goods' fee-related motion pursuant to 28 U.S.C. § 1915(g) due to the number of cases he had previously filed in federal court that were dismissed as frivolous or for failure to state a claim upon which relief may be granted. [Record No. 5] Therefore, Goods was given 30 days to pay the required $405.00 filing and administrative fees. The case was dismissed for failure to prosecute after Goods failed to do so. [Record No. 6]

Goods filed an appeal with the United States Court of Appeals for the Sixth Circuit which determined, considering its intervening decision in *Crump v. Blue*, 121 F.4th 1108 (6th Cir. 2024), that Goods had "at most only two strikes under § 1915(g)" and thus was eligible for pauper status. *Goods v. Daley*, No. 24-5967 (6th Cir. Apr. 29, 2025). As a result, it vacated this Court's decision and remanded the matter for further consideration. Therefore, this Court will reinstate Goods' motion to proceed *in forma pauperis*.

Having considered Goods' motion and the financial information provided, the Court is persuaded that he lacks sufficient funds to pay the entire $350.00 filing fee up front. The Court will grant his request on the terms established by 28 U.S.C. § 1915(b). And because Goods will be granted pauper status in this proceeding, the $50.00 administrative fee will be waived. *See* District Court Miscellaneous Fee Schedule, § 14.

The Court now screens Goods' Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.[1] Those provisions require the Court to dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. At this stage, the Court accepts Goods' factual allegations as true and construes his complaint liberally in his favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573-74 (6th Cir. 2003).

Goods' Complaint describes events alleged to have occurred at the Campbell County Detention Center ("CCDC") in January 2022 through May 2023.[2] Goods names the following individuals as defendants: (1) Jailer James Daley; (2) Deputy Turner; (3) Deputy Hamilton;

---

[1] Goods recently filed a "motion for a writ of prohibition" with the Sixth Circuit seeking removal of the undersigned from this case and a possible change of venue. [Record No. 14] However, Goods does not cite any colorable basis for his requests and the mere filing of a petition for a writ of prohibition does not divest this Court of jurisdiction. *See Hill v. United States*, 2017 WL 6624408 at *2 (E.D.N.Y. Sept. 20, 2017). *See also Farrell v. US Bank Nat'l Ass'n*, No. 14-11781, 2015 WL 13035017, at *1 n.1 (E.D. Mich. Jan. 15, 2015) (observing that "the filing of a petition for a writ of mandamus [in the court of appeals] does not divest the district court of jurisdiction, nor does its pendency have the effect of staying proceedings in the district court"); *Nascimento v. Dummer*, 508 F.3d 905, 910 9th Cir. 2007 ("[P]etitions for extraordinary writs do not destroy the district court's jurisdiction in the underlying case.").

[2] Goods was detained at CCDC pending his trial in *United States v. Goods*, 2: 22-CR-017-DLB-CJS, beginning in January 2022. Goods was convicted of multiple controlled substance offenses and sentenced to a total of 420 months' imprisonment on May 24, 2023. It appears that, following the sentencing hearing, Goods remained confined at CCDC pending his designation to a federal institution.

(4) Deputy Hunt; (5) Deputy Tyler; (6) Sergeant Dorgan; and (7) Sergeant Haskins. While Goods' claims are difficult to follow, he alleges that Daley's policy of allowing new inmates to skip a rapid COVID-19 test and "mingle with healthy inmates" caused him to contract COVID-19 in August 2022. [Record No. 1 at 2] He further asserts that this caused him to miss an important court date and, instead of being treated for COVID-19, he was placed in solitary confinement for four days.[3] *Id.*

Goods also complains that Daley placed him in solitary confinement and/or suicide watch following his sentencing hearing on May 24, 2023. *Id.* at 3. Goods alleges that Tyler, Turner, and Haskins stripped him down and dressed him in a smock with no socks or mat and placed him in a cell that had not been cleaned. He believes that Daley ordered this confinement for retaliatory purposes and to discourage him from filing future litigation. He also believes that Daley's conduct was racially motivated.

Finally, Goods makes vague references to a conspiracy with Assistant United States Attorneys, violations of the attorney-client privilege, mail tampering, and illegal searches of his chirps and telephone calls. Goods seeks monetary damages and an injunction "to stop harmful polic[ies]." *Id.* at 8.

Goods' allegations as pleaded do not state a claim upon which relief can be granted. First, Goods does not allege any wrongdoing with respect to Defendants Dorgan, Hunt, or Hamilton. Instead, he simply alleges that Dorgan and Hunt transported him to/from jail.

---

[3] The publicly available record in *United States v. Goods*, 2: 22-CR-017-DLB-CJS [Record No. 71], indicates that a status conference scheduled on August 30, 2022, before United States Magistrate Judge Candace Smith was continued to September 6, 2022, because Goods tested positive for the coronavirus. The status conference took place on September 6, 2022, as scheduled. *See id.* at Record No. 75.

[Record No. 1 at 3] And Goods only alleges that Hamilton "was a witness to the C-19 situation and one [sic] packed my property before I was placed on 'high risk' suicide watch." *Id.* Construing Goods' Complaint liberally, these allegations do not indicate that any constitutional violation occurred.

Additionally, Goods fails to state any cognizable claim for relief against Defendants Tyler, Turner, and Haskins. While prisoners retain limited rights to bodily privacy under the Fourth and Eighth Amendments, simply being required to wear a smock while on suicide watch does not infringe on those rights. *See Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004) (observing, for example, that "a prison policy forcing prisoners to . . . be exposed to regular surveillance by officers of the opposite sex while naked . . . would provide the basis of a claim on which relief could be granted"). Ald although Goods claims that Tyler, Turner, and Haskins "stripped" him down before placing him in the smock, he does not allege that the defendants engaged in any conduct that could arguably be construed as having infringed on his constitutionally-protected right to bodily privacy.

Goods' claims that Tyler, Turner, and/or Haskins did not give him socks or a mat and placed him in a cell that had not been cleaned also fail to state a constitutional violation. Prisoners are not entitled to comfortable living conditions, *see Rhodes v. Chapman*, 452 U.S 346-47 (1981), and "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Goods' allegations do not describe conditions that are sufficiently grave to give rise to an Eighth Amendment violation. *See, e.g., Grissom v. Davis*, 55 F. App'x 756, 757-58 (6th Cir. 2003) (holding that a seven-day deprivation of a mattress, sheets, and a blanket did not state an Eighth Amendment claim).

The Court now turns to Goods' allegations against Defendant Daley. To the extent Goods disputes Daley's decision to place him on suicide watch, "[t]emporary placement on suicide watch, even when not necessary, does not implicate a liberty interest protected by the Due Process Clause nor does it amount to cruel and unusual punishment. . . ." *Jones v. Lee*, No. 2: 09-CV-11283, 2012 683362, at *4 (E.D. Mich. Mar. 2, 2012), *report and recommendation adopted*, No. 09-11283, 2012 WL 1048541 (E.D. Mich. Mar. 28, 2012) (collecting cases). Alternatively, Goods alleges that Daley placed him in "solitary confinement" during this period, but segregated confinement raises constitutional liberty interests only when it imposes an atypical and significant hardship on an inmate in relation to ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Without more, Goods' unadorned allegation that Daley placed him in solitary confinement fails to state a claim upon which relief can be granted.

Goods also fails to state a cognizable claim for relief against Daley regarding COVID-19. Construed as a conditions-of-confinement claim, exposing a prisoner to other inmates that have not been tested for COVID-19 does not present a risk "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993) (applying deliberate indifference standard to conditions of confinement claims). To the extent Goods suggests that Daley was deliberately indifferent to his serious medical need, he does not allege that he suffered from any underlying health condition that made him particularly susceptible to serious illness, let alone that Daley was aware of it. *See Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims).

Next, Goods fails to state a viable claim for relief based on Daley's alleged failure to provide him with treatment for COVID-19. Goods does not provide any information concerning the nature or severity of his symptoms or what type of treatment he allegedly required. The record in Goods' criminal proceeding indicates that he recovered quickly, as he was diagnosed with COVID-19 sometime after August 16, 2022, and was back in Court by September 6, 2022.[4] *See Goods*, 2: 22-CR-017-DLB-CJS [Record Nos. 70 and 75.]

Finally, Goods' conclusory references to a conspiracy, violations of the attorney-client privilege, mail tampering, and illegal searches of his chirps and telephone calls are not supported by factual allegations and therefore do not support any cognizable claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that a plaintiff's complaint must contain more than "labels and conclusions" and a "formulaic recitation of the elements of a cause of action will not do"). Likewise, his allegations that Daley's actions were retaliatory and based on Goods' race are entirely conclusory and, therefore, cannot form the basis of a claim for relief. *See id.*

Based on the foregoing, it is hereby **ORDERED** as follows:

---

[4] Goods did not file this action until more than two years after his COVID-19 diagnosis. Even assuming that Goods pursued any grievance procedures that were available to him at CCDC, that process would not have taken an entire year. Thus, this claim also is barred by the applicable one-year statute of limitations. *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 181-82 (6th Cir. 1990) (providing that constitutional torts committed in Kentucky are subject to a one-year period of limitations); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (observing that a cause of action accrues when "the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred"). *See also Alston v. Tenn. Dep't of Corrs.*, 28 F. App'x 475, 476 (6th Cir. 2002) (providing that a district court may raise a limitations bar when the "defect [i]s obvious from the face of the complaint").

1. The Clerk of the Court is directed to **REINSTATE** Goods' motion for leave to proceed *in forma pauperis* [Record No. 2].

2. Goods' motion for leave to proceed *in forma pauperis* [Record No. 2] is **GRANTED**. Title 28 U.S.C. § 1915(b)(1) requires a prisoner-plaintiff to pay the $350.00 filing fee for a civil action as set forth below:

   a. The financial documentation filed by Goods indicates that he lacks sufficient income or assets to pay the initial partial filing fee required by 28 U.S.C. § 1915(b)(1)(A) and payment of such fee is therefore **DEFERRED**;

   b. The Clerk of the Court is directed to serve a copy of this Order and Notice of Payment form upon the Warden of the institution where Goods is currently confined; and

   c. Each month, Goods' custodian is directed to send the Clerk of the Court a payment in the amount of 20% of his income for the preceding month out of his inmate trust fund account, but only if the amount in the account exceeds $10.00. The custodian is directed to continue such monthly payments until the entire $350.00 is paid. *See* 28 U.S.C. § 1915(b)(2).

3. Goods' Complaint is **DISMISSED**.

Dated: June 24, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky